UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KARIM DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 2:15-cr-00186-GZS-1 |
| v. | ) | 2:19-cv-00033-GZS |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner Karim Davis moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 60.) Following a guilty plea, Petitioner was convicted of possession with intent to distribute heroin and cocaine base; the Court sentenced Petitioner to 151 months in prison. (Judgment, ECF No. 47.) The First Circuit affirmed the sentence. *United States v. Davis*, 873 F.3d 343 (1st Cir. 2017). In response to the section 2255 motion, the Government moved for dismissal. (Response, ECF No. 65.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request to dismiss Petitioner's motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On February 10, 2016, Petitioner pled guilty to possession with intent to distribute heroin and cocaine base. (Change of Plea Hearing, ECF No. 30; Judgment at 1.)

The Probation Office determined that Petitioner's base offense level for the quantity of controlled substances was 26. (Second Revised Presentence Investigation Report ¶ 22, hereinafter PSR). Probation recommended a two-level criminal livelihood enhancement and a three-level enhancement for Petitioner being a leader in a criminal scheme involving five or more participants. (*Id.* ¶¶ 23, 25.) Petitioner's prior convictions produced a criminal history score of eight, which corresponds to a criminal history category of IV. (*Id.* ¶¶ 33 – 44.) Defendant, however, was determined to be a career offender due to two prior felony convictions for controlled substance offenses, setting his base offense level at 32 and his criminal history category at VI. (*Id.* ¶ 28, 45.) After a three-level reduction for acceptance of responsibility, Petitioner had a total offense level of 29, which, when combined with his criminal history category of VI, yielded a guideline imprisonment range of 151 – 181 months. (*Id.* ¶ 67.)

On August 16, 2016, after overruling objections concerning the drug quantity, the criminal livelihood enhancement, and the career offender designation, the Court sentenced Petitioner to 151 months of imprisonment.[1] (Sentencing Transcript at 3 – 4, 9 – 18, 34 – 35, ECF No. 52; Judgment at 2; PSR at 24 – 26)

On appeal, Petitioner argued that his prior conviction under one of New York's distribution statutes, NYPL § 220.31, which criminalizes an offer to sell controlled substances, did not meet the guideline definition of a prior controlled substance offense.

---

[1] The Court, pursuant to the Information filed under a different docket number, also sentenced Petitioner at the same time to a concurrent 151-month term of imprisonment for conspiracy to distribute a controlled substance. (Judgment at 1, 2; Information, 2:16-cr-00026-GZS-1, ECF No. 2.)

*Davis*, 873 F.3d at 345. On October 11, 2017, the First Circuit disagreed, citing prior in-circuit caselaw analyzing a similar New York provision. *Id.* at 345 – 46 (discussing *United States v. Bryant*, 571 F.3d 147 (1st Cir. 2009) and NYPL § 220.39). The First Circuit also rejected Petitioner's challenge concerning the criminal livelihood enhancement. *Id.* at 346.

## DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697.

If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

**B.     Claims and Analysis**

    **1.     Career Offender Enhancement**

Petitioner again challenges his career offender designation, but this time on new grounds. Relying on *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), Petitioner argues that one of his two relevant prior convictions cannot serve as a predicate offense for

the career offender enhancement because the particular New York drug distribution statute, NYPL § 220.31, applies to one or more substances not listed under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq.

"The Supreme Court has held that a sentencing court should use a categorical or modified categorical approach when considering sentencing enhancements based on prior offenses." *United States v. Mohamed*, 920 F.3d 94, 101 (1st Cir. 2019) (citing *Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016); *Taylor v. United States*, 495 U.S. 575, 588 (1990). "In short, [courts] look to the statutory definition of the offense in question, as opposed to the particular facts underlying the conviction." *United States v. Davila-Felix*, 667 F.3d 47, 56 (1st Cir. 2011) (internal quotations omitted). A state statute of conviction can only serve as a predicate offense "if the statute's elements are the same as, or narrower than" the federal elements. *See Descamps v. United States*, 570 U.S. 254, 257 (2013).

When a state statute "sets out a single (or 'indivisible') set of elements" the straightforward categorical approach applies, but when a state statute has "a more complicated (sometimes called 'divisible') structure . . . list[ing] elements in the alternative, and thereby defin[ing] multiple crimes" courts use the modified categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2248 – 49 (2016). Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 2249 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). The modified categorical approach, however, "gives a sentencing court no special warrant to explore the facts of an offense, rather than

to determine the crime's elements and compare them with the generic definition." *Id.* at 2251.

For purposes of the career offender guideline enhancement, U.S.S.G. § 4B1.1(a), the term "controlled substance offense" means:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b).

On July 23, 2018, the Second Circuit concluded that the phrase "a controlled substance" in § 4B1.2(b) "refers exclusively to a substance controlled by the [federal Controlled Substance Act]" and does not refer to substances listed only under state law. *Townsend*, 897 F.3d at 72. In other words, the Second Circuit determined that the guideline enhancement covers state and federal offenses for distributing federally-controlled substances, but the guideline enhancement does not cover state offenses for distributing substances controlled under state but not federal law. *See id.* 73 – 74. The *Townsend* Court relied on the presumption originating in *Jerome v. United States*, 318 U.S. 101, 104 (1943), that federal crimes ought to apply uniformly regardless of how the very same conduct might be characterized under the laws of different states. *Id.* 70 – 71 ("It may be tempting to transitively apply the 'or state law' modifier from the term 'controlled substance offense' to the term 'controlled substance'" but doing so would violate the *Jerome* presumption). Because the Second Circuit had already held that NYPL § 220.31 is indivisible, *see Harbin v. Sessions*, 860 F.3d 58, 61 (2d Cir. 2017), the categorical approach applied, making

7

*Shepherd* documents irrelevant. *Townsend*, 897 F.3d at 74. In addition, because § 220.31 covers at least one substance controlled under New York law which is not controlled under federal law, the Second Circuit held that a "prior conviction under NYPL section 220.31 is not a predicate offense" under the guidelines. *Id.* at 74 (discussing human chorionic gonadotropin).

Petitioner frames his challenge to the career offender determination as an ineffective assistance of counsel claim.[2] He contends that his sentencing or appellate counsel were deficient for failing to raise the argument that his conviction under NYPL § 220.31 cannot serve as a predicate offense because New York's controlled substance list is more expansive than the federal list.

---

[2] In his reply, Petitioner framed the argument in the alternative as a due process claim, arguing that even if his counsel's performance was not deficient, his sentence should be amended because it was still improperly enhanced. That stand-alone claim is procedurally barred, however, because Petitioner did not raise it on appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002) ("a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence"). The only argument Petitioner presents that could be interpreted as cause for the failure to raise the claim earlier is ineffective assistance of counsel, which involves the same standards as Petitioner's original ineffective assistance of counsel argument.

Contrary to Petitioner's alternative assertion at the end of his petition and in his reply, he cannot invoke the "plain error" standard of review at this stage. *See e.g.*, *Hicks v. United States*, 137 S. Ct. 2000 (2017) (Gorsuch, J. concurring); *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018). That standard ordinarily does allow for the correction of clear guideline calculation errors, but it applies Federal Rule of Criminal Procedure 52(b), which "provides that a court of appeals may consider errors that are plain and affect substantial rights, even though they are raised for the first time on appeal." *Rosales-Mireles*, 138 S. Ct. at 1903. That standard allows defendants to raise some arguments on appeal which they failed to present to the district court. It does not apply to habeas proceedings after the appeal is complete and the conviction is final. Accordingly, Petitioner cannot use plain error standard of Rule 52(b) to create a freestanding claim for postconviction relief.

Petitioner also suggests that he believes the Court has broad discretion to alter his sentence. After a sentence is final, however, the Court has no discretion to alter a sentence unless specifically authorized to do so under narrow circumstances recognized in statute or the Rules of Criminal Procedure. *See e.g.*, 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that . . .").

Subject to very narrow exceptions, however, when ineffective assistance of counsel is asserted, "a case decided after a petitioner's conviction and sentence became final may not be the predicate for federal habeas corpus relief unless the decision was dictated by precedent existing when the judgment in question became final." *See Stringer v. Black*, 503 U.S. 222, 227 (1992); *see also*, *Powell v. United States*, 430 F.3d 490, 491 (1st Cir. 2005) ("Advocating changes in recent precedent may occasionally be required of competent counsel, but it would take unusual circumstances") (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir.1995) ("the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law")); *see also*, *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) ("we have a wall of . . . precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel"); *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972) ("Clairvoyance is not a required attribute of effective representation . . . . [A]lthough counsel need not be a fortune teller, he must be a reasonably competent legal historian. Though he need not see into the future, he must reasonably recall (or at least research) the past").

In 2016 and 2017, during Petitioner's sentencing and appeal proceedings, there was little suggestion that Petitioner's proposed argument had merit. Before Petitioner's sentencing, this Court had previously determined that § 220.31 was a controlled substance offense, *United States v. Jones*, No. 2:15-CR-10-DBH-02, 2016 WL 3906582, at *2 (D.

Me. July 13, 2016)[3]; at least three other district courts had also concluded that § 220.31 was a controlled substance offense under the career offender guideline, *United States v. Resto*, No. 08 CR. 757 DC, 2012 WL 1132218, at *5 (S.D.N.Y. Apr. 5, 2012), *United States v. Johnson*, No. 12 CR 313 WHP, 2013 WL 1180392, at *2 (S.D.N.Y. Mar. 18, 2013)[4], *Felder v. United States*, No. 5:09-CR-676-3 (NAM), 2016 WL 6110477, at *2 n.1 (N.D.N.Y. Mar. 1, 2016); the Fifth Circuit had upheld another district court's conclusion that § 220.31 categorically was a drug trafficking offense under a closely related guideline provision, *United States v. Hernandez-De Aza*, 536 F. App'x 404, 407 – 09 (5th Cir. 2013), and the Second Circuit held that NYPL § 220.31 was a drug trafficking felony under a similar statutory definition. *Andrews v. Holder*, 534 F. App'x 32, 34 (2d Cir. 2013).

The *Townsend* Court relied on three prior decisions from other circuit courts to support its focus on the federal schedules. *See United States v. Sanchez-Garcia*, 642 F.3d 658, 662 – 63 (8th Cir. 2011) ("California law defines 'controlled substance' differently than the federal CSA. A California defendant may be convicted of possession for sale of a controlled substance without committing a 'controlled substance offense' or 'drug trafficking offense' under the federal guidelines") (internal citations omitted); *United States v. Leal-Vega*, 680 F.3d 1160, 1167 (9th Cir. 2012) ("we hold that the term 'controlled substance,' as used in the 'drug trafficking offense' definition in U.S.S.G. § 2L1.2, means those substances listed in the CSA"); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793–

---

[3] The Court's analysis did not reach the arguments Petitioner raises, however, because the defendant in that case focused on whether his prior conviction was as a juvenile or an adult.

[4] The *Johnson* Court treated the statute as divisible and looked to *Shepherd* documents to determine that the conviction included the requisite conduct and substance. *Id.*

10

94 (5th Cir. 2015) ("For a prior conviction to qualify as a 'drug trafficking offense,' the government must establish that the substance underlying that conviction is covered by the CSA").

The decisions did little to foreshadow the result in *Townsend*, however. Unlike *Townsend*, all three decisions held that the state statutes could still serve as predicate offenses because the state statutes incorporating the state listings created a divisible statute, which allowed the sentencing court to apply the modified categorical approach and examine whether the particular controlled substance involved in the prior conviction was listed under the federal schedules. *Sanchez Garcia*, 642 F.3d at 662 ("To the contrary, the charging document sufficiently identifies the offense as 'possess for purpose of sale a controlled substance, to wit, methamphetamine.' Meth is a drug listed in the federal schedules . . . . The district court properly enhanced the offense levels based on [Defendant]'s prior conviction"); *Leal-Vega*, 680 F.3d at 1169 ("We hold that the felony complaint, read together with the minute order and abstract of judgment, are sufficient under the modified categorical approach to establish that [Defendant] plead guilty to possession with the purpose of sale of tar heroin, a substance included in the CSA"); *Gomez-Alvarez*, 781 F.3d at 796 ("the conviction under section 11351 was for possession of heroin. As heroin is listed as a 'controlled substance' under the CSA . . . we hold that the conviction qualifies as a 'drug trafficking offense' for purposes of enhancement").

Perhaps the first and only decision that suggested the result in *Townsend* was *United States v. Barrow*, 230 F. Supp. 3d 116 (E.D.N.Y. 2017), which was decided on February 2, 2017, while the First Circuit considered Petitioner's appeal. A New York district court

accepted the same two conclusions the *Townsend* court later adopted: that NYPL § 220.31 is indivisible and broader than the federal Controlled Substances Act because it criminalized human chorionic gonadotropin. *Barrow*, 230 F. Supp. 3d at 121 – 25.

Moreover, the Second Circuit's reasoning and decision in *Townsend* have not been universally adopted.[5] The Eleventh Circuit reached the opposite conclusion as the *Townsend* Court on the question of state-only listings. *See United States v. Howard*, 767 F. App'x 779, 785 (11th Cir. 2019) ("We reject [Defendant]'s argument that 'controlled substance' under § 4B1.2 refers only to those illegal substances that are federally controlled. Instead, § 4B1.2 explicitly refers to 'controlled substance offense' as an 'offense under federal or state law'"). The Third Circuit has agreed with the Second, Eighth, Ninth, and Eleventh Circuits on the centrality of the federal listings, but the Third Circuit concluded that § 220.31 can serve as a predicate offense because the thin evidence of actual human chorionic gonadotropin prosecutions meant there was no realistic probability that NYPL §220.31 "is actually applied to conduct outside the scope of the federal controlled substance schedules." *Morey v. Attorney Gen. United States*, 722 F. App'x 239, 241 (3d Cir. 2018). The Sixth Circuit reached a similar conclusion as the *Townsend* Court in one unpublished decision and the opposite conclusion in a different unpublished decision, and it has not yet resolved the discrepancy. *See United States v. Smith*, 681 F. App'x 483, 489 (6th Cir. 2017) ("Because there is no requirement that the

---

[5] The First Circuit has not addressed the issue. It has only addressed New York's closely related provision, NYPL §220.39, repeatedly finding that the provision qualifies as a career offender predicate offense. *See United States v. Bryant*, 571 F.3d 147, 158 (1st Cir. 2009); *United States v. Melvin*, 628 F. App'x 774, 777 (1st Cir. 2015).

12

particular controlled substance underlying a state conviction also be controlled by the federal government, and because the Guidelines specifically include offenses under state law in § 4B1.2, the fact that Illinois may have criminalized . . . some substances that are not criminalized under federal law does not prevent . . . the Illinois statute from qualifying, categorically, as a predicate offense"); *United States v. Pittman*, 736 F. App'x 551, 553 – 55 (6th Cir. 2018) (for purposes of the career offender guideline, "[t]he term 'controlled substance' is in turn defined by statute as 'a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V,'" but finding the state statute divisible and looking to *Shephard* documents to determine if the defendant was charged with trafficking a substance controlled under state law only) (citing 21 U.S.C. § 802(6)); *United States v. Solomon*, 763 F. App'x 442, 447 (6th Cir. 2019) (noting the conflicting decisions but declining to resolve them).

Given that *Townsend* had not been decided at the time of Petitioner's sentencing and appeal and given the lack of a clear indication prior to *Townsend* that such an argument had been or would be persuasive, defense counsel was not constitutionally deficient, regardless of whether counsel's omission was strategic or inadvertent. Even the most competent of attorneys could not be expected to be aware of all the arguments made in other jurisdictions, or that even if aware of the argument, to raise the argument because the weight of authority before *Townsend* suggested the argument would not be successful. *See Lattimore v. Dubois*, 311 F.3d 46, 57 (1st Cir. 2002) ("Appellate counsel is not required to raise every non-frivolous claim, but rather selects among them to maximize the likelihood

13

of success"). As another district court recently concluded in a postconviction proceeding presenting the same argument:

> [Petitioner]'s argument that NYPL § 220.31 cannot be counted toward the career offender enhancement under the categorical approach has recently been lent support by *Harbin v. Sessions*, 860 F.3d 58 (2d Cir. 2017), and *United States v. Barrow*, 230 F.Supp.3d 116 (E.D.N.Y. 2017). But [Petitioner] was sentenced years before those decisions were issued, and "[c]ounsel is not required to forecast changes in the governing law."

*Hansberry v. United States*, No. 3:16-CV-00965 (SRU), 2018 WL 3862690, at *5 (D. Conn. Aug. 14, 2018) (quoting *Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017)); *see also*, *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994) ("the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense"). In short, Petitioner cannot prevail on his ineffective assistance of counsel claim.[6]

### 2. Criminal Livelihood Enhancement

Petitioner requests reevaluation of the criminal livelihood enhancement because he maintains that it was based on testimony and uncorroborated statements from anonymous sources and assigned more criminal activity to Petitioner than the activity for which he was responsible. Petitioner cannot reassert the challenge to the criminal livelihood enhancement because he already did so on appeal. *See Davis*, 873 F.3d at 346. Petitioner

---

[6] Even with the benefit of hindsight after *Townsend*, the merit of Petitioner's argument is questionable. As discussed above, there is a split of authority concerning the centrality of the federal schedules, and there is uncertainty around the divisibility of the statute. Petitioner's argument would likely fail if either issue went against him, given the suggestion in the record that the *Shepherd* documents from his prior conviction could have established that Petitioner's conviction was for a substance criminalized under federal law. (*See* PSR ¶ 41 (discussing cocaine base, not human chorionic gonadotropin)).

14

has not presented a new argument that would justify reconsideration. *See Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) ("Issues disposed of in a prior appeal will not be reviewed again" on postconviction review) (modifications and citations omitted); *Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *4 (1st Cir. 1996) (Petitioners are "not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"). Even if Petitioner could challenge the enhancement here, as the First Circuit explained, the criminal livelihood enhancement had no impact on his final sentence because the career offender enhancement overrode the other offense level calculation. *See Davis*, 873 F.3d at 346. Because Petitioner's challenge to the career offender enhancement was unsuccessful, his argument concerning the criminal livelihood enhancement also fails.

### 3. Amendment 782

Petitioner also raises the two-point reduction that has become available under Amendment 782 to the sentencing guidelines. *See* U.S.S.G. Amend. 782 (Nov. 1, 2014). A district court is permitted to modify a sentence when the original sentence was based on a guideline provision that the sentencing commission subsequently amends and gives retroactive effect. 18 U.S.C.A. § 3582(c)(2); *United States v. Jones*, 778 F.3d 375, 390 (1st Cir. 2015). Amendment 782 took effect in November 2014, however, nearly two years before the Court sentenced Petitioner. Accordingly, Petitioner's sentence already accounted for the change, and he is not entitled to further relief.

### 4. First Step Act

Petitioner requests the Court apply the First Step Act, Pub. L. No. 115-391 (2018), to reduce his sentence. *See generally, United States v. Pierre*, 372 F. Supp. 3d 17, 18 (D.R.I. 2019) (summarizing the changes concerning federal sentences).

Section 401 of the First Step Act reduced the statutory mandatory minimum penalties pursuant to 21 U.S.C. §§ 841 and 851 for defendants with prior convictions for serious drug felonies or serious violent felonies. *Id.* § 401(a). Section 401 does not apply to Petitioner, however, because he was sentenced under the guidelines, not a statutory mandatory minimum. The career offender guideline enhancement, while similar in structure to the mandatory minimums in 21 U.S.C. § 841, carries different penalties, has different criteria, and was not amended by the First Step Act. Furthermore, Congress did not make Section 401 apply retroactively, so it does not apply to defendants like Petitioner, who were sentenced before December 21, 2018. Pub. L. No. 115-391 § 401(c).

Section 404 of the First Step Act made the provisions governing minimum quantities and mandatory minimum sentences for cocaine base in the Fair Sentencing Act of 2010, Pub L. No. 111-220 (2010), apply retroactively to sentences before August 3, 2010. Since Petitioner was sentenced after 2010, his term of imprisonment already accounted for the Fair Sentencing Act's changes to the cocaine base minimums. Accordingly, Petitioner is not entitled to relief under the First Step Act.

### CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court

deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255 and dismiss the motion. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of August, 2019.